# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**YELLOW TRANSPORTATION, INC.,**

    **Plaintiff,**

    v.                                                                            Case No.  05-2463-JWL

**APEX DIGITAL, INC.,**

    **Defendant.**

_____

## MEMORANDUM AND ORDER

Plaintiff Yellow Transportation, Inc. (Yellow) is a Kansas resident which is in the business of hauling freight.  Defendant Apex Digital, Inc. (Apex) is a California resident which is in the business of manufacturing and selling consumer electronic equipment and, in the course of its business, it ships and receives substantial volumes of freight.  Yellow's petition alleges that beginning on or about May 13, 2002, the parties entered into a contractual relationship whereby Yellow provided freight hauling services to Apex through approximately January 20, 2005.  Apex's account became past due, and Yellow now seeks $92,008.15 in past due freight charges.  Yellow asserts state law claims against Apex for breach of contract, action on account, and quantum meruit/unjust enrichment.  This matter comes before the court on Apex's motion to dismiss for lack of personal jurisdiction (Doc. 4).  For the reasons explained below, this motion is denied.

**STANDARD FOR ESTABLISHING PERSONAL JURISDICTION**

"The burden of establishing personal jurisdiction over the defendant is on the plaintiff." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004). When the evidence presented on the motion to dismiss consists of affidavits and other written materials, as is the case here, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quotation omitted). The court "must resolve all factual disputes in favor of the plaintiff." *Bell Helicopter Textron*, 385 F.3d at 1295.

**ANALYSIS**

To obtain personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue." *OMI Holdings*,

Case 2:05-cv-02463-JWL-DJW   Document 19   Filed 02/22/06   Page 3 of 11

149 F.3d at 1090; *accord Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which [the defendant] has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). "[A]n analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause is a two-step inquiry." *Pro Axess*, 428 F.3d at 1276. The court first considers whether the defendant has minimum contacts with the forum state in the sense that "the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If the defendant's actions create sufficient minimum contacts, the court then considers whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

### 1.    Minimum Contacts

The "minimum contacts" standard may be met in either of two ways. *Bell Helicopter Textron*, 385 F.3d at 1296. The court may exercise general jurisdiction if the defendant has "continuous and systematic general business contacts" with the forum state. *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). Or, if the defendant has purposefully directed its activities at residents of the forum, the court may exercise specific jurisdiction in cases that arise out of or relate to those activities. *Id.*

3

(quoting *Burger King*, 471 U.S. at 472-73). In this case, Yellow has made no colorable showing that Apex has continuous and systematic contacts with Kansas. Thus, the court confines its analysis to the minimum contacts inquiry for specific jurisdiction.

To support specific jurisdiction, there must be "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). This requirement precludes personal jurisdiction as the result of "random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475. "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant [it]self that create a substantial connection with the forum state." *Pro Axess*, 428 F.3d at 1277 (quotation omitted). "Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996); *accord Benton v. Gameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 1826 (2005).

Yellow's claims against Apex arise from the fact that Apex entered into a shipping agreement with Yellow, a Kansas resident. "A contract between a nonresident and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." *Benton*, 375 F.3d at 1077 (citing *Burger King*, 471 U.S. at 473). In circumstances involving contractual obligations with a nonresident, "'parties who reach out . . . and create continuing relationships and obligations with citizens of another state are subject to regulation

and sanctions in the other State for the consequences of their activities.'" *Id.* (quoting *Burger King*, 471 U.S. at 473). In such a case, the "relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Id.* (quoting *Burger King*, 471 U.S. at 479). In evaluating these factors, the court must focus on the actions of the defendant. *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) ("Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else.").

In this case, is undisputed that the original freight shipping arrangement was a product of the parties' negotiations in California. Specifically, Loyd Prewett is located at the Yellow terminal in San Bernardino, California, and he worked with Apex in California to commence the business relationship. Apex has provided an affidavit from Leonard A. Alexander, an employee of Apex, in which he explains that all of Yellow's freight services under the parties' arrangement were rendered in states other than Kansas. Furthermore, the services that Yellow provided to Apex were managed, operated, or monitored outside of the state of Kansas inasmuch as Apex arranged for freight services in California through Yellow's client representative or regional manager located in California.

Notwithstanding the fact that the shipping services provided by Yellow under the parties' agreement had no connection to the state of Kansas, Yellow has submitted affidavits which reveal that Apex purposefully directed its activities at Kansas with respect to making payments under the parties' contract. To be sure, the record reveals that Yellow's invoices

called for Apex to remit payment to Yellow to a post office box in Pasadena, California. Yet Mr. Prewett's affidavit states that at all times Apex knew that Yellow's primary offices were located in Kansas and that Apex's account would be managed, operated, and monitored in part in Kansas. Yellow has also provided an affidavit from Dawn Hawkins, a supervisor who manages collections operations at Yellow's corporate headquarters in Overland Park, Kansas. Ms. Hawkins explains that Yellow in fact managed, operated, and monitored Apex's account in Kansas. Her affidavit sets forth details of at least five occasions in which Apex sent sizeable payments to her at her Kansas office. Apex also faxed copies of checks to Yellow's Kansas office. From June of 2003 through September of 2005, Ms. Hawkins regularly communicated with Apex representatives from her office in Kansas. Specifically, she called and received phone calls from and e-mailed and received e-mails from nine Apex representatives and employees, and others on her staff in Kansas likewise communicated with Apex and its employees.

The court finds that resolution of the personal jurisdiction issue in this case is governed by the Tenth Circuit's reasoning in *Continental American Corp. v. Camera Controls Corp.*, 692 F.2d 1309 (10th Cir. 1982). In *Continental American*, the plaintiff, a Kansas corporation, sought to collect on accounts from the defendant, a California corporation, for goods that were manufactured at the plaintiff's factory in Ohio. *Id.* at 1310. The Tenth Circuit held that the fact that the defendant made payments on the account to the plaintiff in Kansas "provide[d] circumstantial proof that the parties agreed some performance would be rendered in the forum state." *Id.* at 1312. Thus, those events created a contract to be performed in part in Kansas,

6

thus satisfying K.S.A. § 60-308(b)(5).[1]  *Id.*  The Tenth Circuit further held that assertion of personal jurisdiction over the nonresident defendant did not violate constitutional due process because "part performance of the contract, *e.g.*, partial payment of the contractual amount, did take place in Kansas." *Id.* at 1314.  The court reasoned that it could "be fairly said that the defendant here availed itself of the privilege of business contacts with Kansas offices" and that "by ceasing to make partial payments, defendant should certainly have foreseen the possibility of being haled into court in Kansas." *Id.*

Following the reasoning of the Tenth Circuit in *Continental American*, the court finds that the assertion of personal jurisdiction over Apex is proper under K.S.A. § 60-308(b)(5) and constitutional due process principles because the record reveals that the parties contemplated that the payment aspect of their contract would be performed at least in part in Kansas.  Neither party has presented evidence that the parties actually agreed in advance on the location where payments would be made.  The only evidence they have presented on this issue is their course of dealing.  Looking to their course of dealing, then, the evidence leads to either of two possible conclusions.  On the one hand, routine payments were to be remitted to a post office box in California.  On the other hand, those same invoices instructed Apex to direct correspondence concerning its account to Yellow's offices in Kansas and Ms. Hawkins' affidavit reveals that Apex did in fact direct correspondence concerning its account to Yellow

---

[1] K.S.A. § 60-308(b)(5) is the subsection of the Kansas long-arm statute which provides for personal jurisdiction over a nonresident defendant as to any cause of action arising from a contract with a Kansas resident "to be performed in whole or in part by either party in this state."

in Kansas. Also, Apex knew that Yellow's primary offices were in Kansas and that its account would be managed, operated, and monitored in Kansas. Most importantly, the record reflects that Apex made five sizeable payments to Yellow at its Kansas office. Collectively, this provides circumstantial proof that the parties agreed that the payment aspect of their contract would be performed at least in part in Kansas. Because the court must resolve all factual disputes in favor of Yellow at this procedural juncture, the court finds that the parties intended for the payment aspect of their business arrangement to be performed at least in part in Kansas.

Apex suggests that the court should segregate the prior payments made in Kansas by characterizing them as "not involved in the present action." The court finds this argument unpersuasive. During the course of the parties' business relationship, Apex has regularly dealt with Yellow's personnel in Kansas concerning its account. The fact that the parties may have anticipated that routine payments would be remitted to an address in California does not foreclose the possibility that the parties may have also implicitly agreed that personnel in Yellow's Kansas office would handle such non-routine account matters as those at issue here.

The court also finds unpersuasive Apex's argument that the parties' agreement required payment in California, as evidenced by Yellow's invoice. Again, the invoice is only one permissible view of the evidence. As discussed above, the court must resolve all factual disputes in favor of plaintiff and, as such, the court must adopt the other permissible view of

the evidence, which is that the parties contemplated that at least a portion of the payment aspect of the contract would be performed in Kansas.

In sum, the court finds that an examination of the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and, perhaps most informative here, their actual course of dealing, reveals that Apex reached out and created a continuing relationship with a citizen of Kansas. As such, it is subject to regulation in Kansas for the consequences of its activities in Kansas. Apex purposefully directed its activities at Kansas in making payments on the contract and thereby availed itself of the privilege of conducting business in Kansas. By allegedly ceasing to make payments on its account, it reasonably should have anticipated being haled into court here. Accordingly, Yellow has established that Apex has minimum contacts with the forum state of Kansas.

### 2. Traditional Notions of Fair Play and Substantial Justice

In analyzing whether a court's exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the court determines whether its "exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Pro Axess, Inc. v. Orlux Distrib'n, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005) (quotation omitted); *accord Benton v. Cameco Corp.*, 375 F.3d 1070, 1078 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 1826 (2005). In undertaking this analysis, the court considers: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies,

and (5) the shared interest of the several states in furthering fundamental social policies." *Pro Axess*, 428 F.3d at 1279-80 (quotation omitted). The minimum contacts and reasonableness inquiries are complementary such that they evoke a sliding scale: the weaker the showing of minimum contacts the less a defendant needs to show in terms of unreasonableness to defeat jurisdiction and, vice versa, a borderline showing of minimum contacts may be fortified by an especially strong showing of reasonableness. *Id.* at 1280; *Benton*, 375 F.3d at 1079. Where a plaintiff has demonstrated that the defendant purposefully directed its activities at the forum state, the defendant "'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Pro Axess*, 428 F.3d at 1280 (quoting *Burger King*, 471 U.S. at 477).

Here, Apex has presented no argument, affidavits, or other evidence from which the court can find that some other consideration would render jurisdiction over Apex unreasonable. Specifically, Apex has made no showing that Kansas does not have an interest in resolving this dispute or that litigating this lawsuit in Kansas would unduly burden Apex, would not further Yellow's interest in receiving convenient and effective relief, would be contrary to the interstate judicial system's interest in obtaining the most efficient resolution of controversies, or would violate the shared interest of the several states in furthering fundamental social policies. In sum, Yellow has made a prima facie showing that Apex purposefully directed its activities at the forum state and Apex has not persuaded the court that the presence of other considerations would render jurisdiction unreasonable. With Apex

having failed its burden of proof on this issue, then, the court finds that exercising jurisdiction over Apex does not violate traditional notions of fair play and substantial justice.[2]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 4) is denied.

**IT IS SO ORDERED** this 22nd day of February, 2006.

                                              s/ John W. Lungstrum  
                                              John W. Lungstrum  
                                              United States District Judge

---

[2] Having decided this issue based on the propriety of jurisdiction under K.S.A. § 60-308(b)(5) and the Tenth Circuit's reasoning in *Continental American*, the court declines to consider the parties' additional arguments based on K.S.A. § 60-308(b)(11), the impact of the service-of-suit clause included in the tariff, and associated issues concerning whether Apex actually had notice of this tariff provision. Instead, the court simply notes that the existence of the clause certainly raises interesting questions about whether Apex may have waived its objections to personal jurisdiction.